We'll begin with Appeal Number 2009-1222, Robertson v. Timmermans. Mr. Payne, good morning. Please proceed. Good morning. This is a case about the board not applying the written description requirement according to NRA spin-up. And what has happened is we have claim terms in an interference that needed to be interpreted. And those were interpreted based upon the host specification, i.e., the specification into which they were copied, rather than the two specifications is remarkable. One specification, the original specification from which the claims were copied, dealt with a solid rod. The application into which the claims were copied dealt with a tube with a bowl portion. So when they copied the claims concerning a solid rod, there was nothing in the host specification that had anything to do with a solid rod. It was all a tube with a bowl portion. NRA spin-up, the rule in NRA spin-up, had the board applied that rule and done it correctly, would have looked back to the original specification and said, how do these words, what do these words mean? I don't think there's much dispute about that. Doesn't Agilent settle that issue? Agilent does, even though I think it may still be up in bonk. I don't know. But yes, I agree. Agilent did come along after that and say that the board needed to look to the original specification, which was not done in this case. So our law is clear? Our law is clear, Your Honor. What else do you have to say? Well, I would say that the distinguishing argument that opposing side has made is that even though they didn't apply the law correctly, it doesn't make any difference. And the reason they say it doesn't make any difference is because both sides agreed to use dictionary definitions, and they did use dictionary definitions, and the board adopted the most common meaning of solid with respect to rod, and therefore no harm was done. Well, it's actually not the most common meaning. Well, I agree with you. The first meaning in Webster's is the one that you espoused. I agree, Your Honor. But the board indicated that and adopted that meaning. Now, do you win even under the board's construction? Does the specification satisfy the written description, which is both solid and hollow, but the written description is only satisfied for hollow? You mean the host written description? No, I mean the second written description. You construe the claim in the light of the host written description. You determine validity based on the second written description, the second specification. That's right. If it were a matter of evaluating novelty or obviousness, you would use the row case, and you would use the host written description. No, but what the question I'm asking is, do we judge, even under the board's construction, isn't there a written description problem here, because the second written description doesn't describe a solid rod? Absolutely. As a matter of fact, there's not a word in it that relates to solid rod or a drawing. The board seems to think the written description requirement's satisfied under their construction if there's a written description of a hollow rod, which seems to be odd. Well, it's odd and it's inconsistent and it's incorrect. What do you think we should do with this? We've all agreed that, I assume, at least for debate purposes, the law is clear and there's a problem with the written description to which it's supposed to go. What is your suggestion as to what we do with this problem? I think it should be reversed and remanded. Should we construe the claims? Should we review the claim language and re-evaluate the claim language in light of the originating specification? Or simply remand and let the patent office do that in the first instance? Have you thought about that? Well, actually, I have not. But we have, so why don't you tell us now that you're thinking about it what you think. What I think would be that it really ought to be remanded and let the patent office take the correct description. Why should they do it rather than we do it? There is no reason. You certainly could do it and there would be no problem with this court. But a minute ago you were saying the patent office should do it. Yes. Give us a reason for that. Well, I think that they are the ones that this process came through and they would be the more likely agency to do it. Now, can the court do it? Yes, I think the court can do it. Pretty well, I would think you'd want us to do it. Well, I would. I mean, I have no problem with you doing it. Otherwise, you risk having the patent office adopt an interpretation that you disagree with and you're back here again. Well, that would be true, Your Honor. Of course, you also risk having us come up with one you don't like and you're not able to come back again. Well, that's true as well. That's true as well. I think it's very clear that there's something really wrong with what happened here and it needs to be fixed in any stretch of the imagination. All right. You've got some more time, but is there anything else you want to say? I think I've said everything I need to say. All right. I've reserved some rebuttal time. Absolutely. We will reserve your time for rebuttal. Let's hear from Mr. Young. Okay. Thank you, Your Honor. Good morning. Good morning. Good questions. Is there any question that the board applied the wrong law in evaluating this question? Yes. The board articulated the wrong law several times, but it never applied that law. Why? Because contrary to what Mr. Payne says, the board did not interpret the term solid based on the Timmermans' application. It interpreted the word, what, in the abstract? No. The parties presented the board with dictionary definitions. Dr. Mostovich, representing Robertson as an expert, said, don't look at either specification. Certainly don't look at ours. Let's use a dictionary definition for solid. Well, isn't that contrary to our law? Well, I think it is. Doesn't our law require that it be interpreted in the light of the Robertson? Yes, it does. So the board didn't do what our law required. Well, Robertson certainly didn't advocate that they do that, and no, I don't think they did. I think the board adopted the only construction that was consistent with both specifications. Robertson's definition- Just wait a second. Forgive me for interrupting, but you argued a minute ago that the board interpreted this expression without reference to either specification. Now you're arguing they interpreted it in light of both specifications. No, they interpreted the term in such a way as to be consistent with both specifications. They didn't draw- And what basis is there in our precedent to endorse that kind of an approach? Well, consider the board's position. This was a motion for summary judgment. Robertson was arguing that the Timmermans' construction of solid was unreasonable. So the board went down through it and looked at it from every angle that Dr. Mostovich presented, and they said, no, that doesn't make it unreasonable. No, that doesn't make it unreasonable. When they got to the bottom line, they said, you haven't proven any aspect of this interpretation of this construction of the term solid is unreasonable. Therefore, you lose. Now, let's look at the Robertson construction of solid. It says it's filled up with solid material within its general outline. You can't adopt that construction based on the Robertson specification because it's inconsistent with the Robertson specification. Because there's this dip in it? For two reasons. Let's look at the Robertson specification and I'll read from the patent. LEDs, this is in column 1, line 10. The LEDs are incorporated within a clear or translucent tube or rod. Within a tube or rod. How do you find room? The specification in using the term solid is clearly referring to something which is solid throughout. Right? There isn't any reference in the Robertson specification to a hollow tube being called a solid tube. That's correct. But the terms are used in the specification in such a way as to suggest that they are not mutually exclusive. In both cases there's room within them for the LEDs. Once you find room within a solid rod for the LEDs The original claims were divided into two parts. There were claims to a solid rod and then there were claims to a hollow rod. That's correct. When the restriction requirement came along, the council representing Robertson said claims 8 through 11, which includes the count, were generic to both embodiments. Were generic to both embodiments and that was never ruled on in the patent office. Contrary to Mr. Payne's argument, the patent office never disagreed with that statement. So here we have the restriction requirement disagreement with that statement? No. The restriction requirement said that claims 1 through 7 were not generic and they were unique to the hollow embodiment. Claims 8 through 13, council argued were generic to species 1 and 2, the hollow rod, the solid rod. They were generic and the board I'm sorry, the patent office never disagreed with that. There's nothing in the record and I have to have the detailed action that followed the response that said that those claims are generic to both embodiments. It's not in either appendix but I have to have it with me. The question is what does the claim that constitutes the count cover? Correct. That was one of the claims that Robertson argued was generic to both tube and rod consistent with his own specification. What page of the appendix is that at? The argument is appendix 202. What does it matter what he argued? He could have argued that the moon is made of blue cheese and that wouldn't mean anything would it? Sure. Because that's his official position on the interpretation of that term. So what? So he's wrong. And he's got it again in his specification in column 1 saying solid doesn't mean there's no room within it for something else. It means, I guess that it doesn't have a through bore that goes end to end. But once you take this so called solid rod and dig it out or bore well the specification also says you can bore receptacles into it It's clear that the written description of the Robertson patent covers both solid and hollow rods. Isn't it? Correct. It's also clear that the claims of the Robertson patent cover only solid rods because that's the only thing mentioned in those claims. Isn't that right? I respectfully disagree with that. And it doesn't matter whether Robertson thought that it covered blue cheese on the moon, does it? If that's all they cover. That's the issue. The issue is not what Robertson thinks. The issue is what does that claim mean? Well, your argument suggests that what the inventor and his representatives think his claims cover and what the rest of the world thinks the claims cover are two different things and that's never been the law. That's always been the law. We have never said and in fact we have cases that say it doesn't really matter what the inventor thought he was inventing and in fact we have cases that say we don't even want to hear from the inventor. Well, if you're talking about what did I intend by this, that's true. But if we're looking at the question of specification estoppel then it's the exact opposite of what your honor just articulated. Now you have the inventor's expression in his own patent application as to what he means by this and that's binding on it. But it's not a question of what the inventor means. It's a question of what a person of ordinary skill in the art would have interpreted the written description to describe. Based on the specification. Based on the specification. And the prosecution history. Yeah, but your description of the prosecution history seems to me is inaccurate and please look at 202 and he describes both claims 1 to 6 and 7 to 13 as generic and to species 1 and 2 that is to the hollow and solid rock. That obviously that interpretation, whatever value it might otherwise have, was obviously rejected, was it not? It was not. Wait. By the examiner because he continued to allow claims which were described as generic to both species 1 and 2. Right? He required the election with respect to all three species He said there are three separate inventions here, three separate species, right? Right. And he could not have allowed, which are the claims that he allowed? He allowed 8 through 13. 8 through 13 or 7 through 13. He could not have allowed those if he had accepted this interpretation that those claims both covered species 1 and 2 because the examiner regarded those as two separate species that had to be separated out. Correct? Not quite. What's the matter with that? He identified three species, 1 2 and 3. He said he didn't think there was a generic claim and he didn't divide the claims up. He asked counsel to divide the claims up. He said there are three separate species and they have to be separated out and the applicant describes the claims 7 through 13 as including two separate inventions, species 1 and 2. If the examiner could not have agreed with that interpretation because he allowed those claims and did not regard them as generic to species 1 and 2. Isn't that correct? No, Your Honor. I do not believe that is correct. He did not allow 1 through 6 because he believed that those... But he allowed 8 through 13 and he could not have allowed them if he had accepted this interpretation that they included both species 1 and 2. Is that not correct? No, I don't believe that is correct. Why is that not correct? Because the presentation by Robertson back to the examiner was that 1 through 7 were specific were generic. Were generic. Actually 1 through 13 were generic. 7 through 13 were generic to species 1 and 2. 1 through 6 were generic to all three. But species 1 and 2 in the examiner's view were separate inventions and were the subject of the restriction requirement. If he accepted the applicant's interpretation and allowed those claims, he would have been allowing claims which encompass two distinct inventions. And that's just what he did. Obviously he didn't accept the construction. He wouldn't have allowed it if he had accepted the construction. There was never a construction of terms but in any event the argument was made and the examiner never ruled on it that claims 1 through 6 were generic as to all three embodiments. That's 202. 7 through 13 were generic to 1 and 2. 14 through 19 were withdrawn as unique to species 3. The examiner then allowed 7 through 13 without comment on whether or not they were generic to 1 and 2. Where does that leave us? That's a good question. Mr. Young, let me ask you a question. It seems clear that the board however they got around to their interpretation of the count it seems clear that they didn't expressly interpret it in the light of the written description of the Robertson patent from which the count was taken. At the time the board handled this there may have been some ambiguity in exactly how you go about it but that ambiguity is now resolved and I think we're all in agreement as to what seems to be our law on this issue. Somebody now has to interpret the language of the count in the light of the Robertson patent. Should we do that or should we remand it to the board to do that in your view? Help me with that. I heard your other argument I understand that it really shouldn't matter either way for all the reasons you gave and my mind is open to consider all of that. I don't want you to think I'm prejudging your case but let's assume I am foolish enough to come out with the idea that somebody needs to really get into this thing. Who does that? Us? Do we do that or do we send it back to the board? Help me on that. Judicial and administrative efficiency notwithstanding I think there are some good arguments for giving the board an opportunity to reconcile this decision to the new law. I don't think the law is yet fully understood I think the sequence is that in this interference situation you do construe the terms of the copied claim based on, if necessary, based on the specification from which they are drawn. Once you've done that, now I think the regulation applies that you must construe those claims according to the broadest reasonable interpretation just like the regulation says. Once you do that you get right back to the Timmermans' construction and we're right back where we started from. But do I think the board would benefit from an opportunity to reconcile this decision to that law? Yes. And I'm confident that they'll come out the same way. Equally importantly, would the parties benefit from the board doing it? I think they would. The record is complete it would be a relatively simple matter to have the board say, oh, okay let's do this. I think they're going to follow the exact points that I have made here today and when they do they're going to come out in the same place. Another appeal, right? Maybe. Alright, Mr. Young we have your argument. Thank you very much. Your time has expired. Thank you for your attention. Mr. Payne? Have you heard anything that do you think warrants comment? Just a couple. Then come forward. First, with respect to the Robertson patent, during the argument there was talk about that Robertson was defining a solid and hollow rod. A solid rods and hollow rods. That's not what Robertson defined. That's not in the specification. What's in the specification of Robertson is a solid rod and a hollow tube. It is even more emphatic than what has been argued here today. Robertson talks about a solid rod and a hollow tube which really sets apart and distinguishes. The present invention provides several embodiments of an elongate hollow tubular or solid rod lighting device, including a plurality of LEDs etc. That was the distinguishing feature that the examiner restricted out was this solid rod portion and hollow tube portion. The fact of the matter is the practitioner, the patent practitioner lost to that argument. Now it's not fair to go back and say, well gosh in the patent office they said you had more than one invention and now you don't. We're back here today arguing exactly what the patent office did in that restriction requirement and said, hey there's more than one invention. Now they're saying in this interference, no there's not and there's not because the definition of solid is it's not liquid or gas. What really happened here is we lost all sense of direction in trying to define these terms. All we had to do was look at the specification. It defines it admirably. Is there any justification whatsoever in Robertson for any interpretation of the word solid in relation to the state of matter? Solid liquid gas? As opposed to solid being a reference to some physical characteristic? No, that is exactly my point, your honor, is that's not the issue that they were trying to resolve. It makes it nonsensical. You couldn't have a liquid or gas rod, right? I'm sorry? You couldn't have a liquid or gas rod. Exactly. Exactly. Or a liquid or gas lighting fixture. Exactly. And that's why I say it was nonsensical. We lost our direction when we were trying to define these things and so that settles my comments about what's in Robertson and the restriction requirement. The other thing is, if it would please the court, after having an opportunity to think about who should do this, I think for judicial economy and expediency, I think this court ought to do it so that we won't be back here again. You don't think the patent office is educable? No, I think they're very educable. As you recall, my first comment was they probably would be the most likely to do it, but the fact of the matter is, I think there are some economy issues and some issues of what is the best way to do it so that we're not back here again. And I think if we can get it all done with one trip to visit this court, that it would be very good for both parties. Okay. Thank you very much. Case is submitted.